COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-282-CV
 
 
JACK 
D. ROBINSON                                                              APPELLANT
 
V.
 
BAYLOR 
HEALTH CARE SYSTEM                                             APPELLEES
AND 
BAYLOR ALL SAINTS
MEDICAL 
CENTER                                                                                  
 
 
------------
 
FROM 
THE 352ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION [1]
 
------------
I. Introduction
        In 
five issues, appellant Jack D. Robinson appeals the trial court’s granting of 
appellees Baylor Health Care System and Baylor All Saints Medical Center’s 
motion for summary judgment in this case, which involves the termination of 
Robinson from his employment. We affirm.
II. Background
        In 
the fall of 2001, Baylor Health Care System (“BCHS”) was in the process of 
acquiring All Saints Health System (“All Saints”). This acquisition was to 
be effective January 1, 2002, leading to the creation of Baylor All Saints 
Medical Center (“Baylor All Saints”), an affiliate hospital under BCHS. 
During this period, Robinson was the chief financial officer for All Saints and 
was to participate in the due diligence process and in the integration of the 
financial systems of All Saints and BCHS. Robinson had been employed under an 
executive severance package since April of 2000 wherein, if terminated as a 
result of a merger between All Saints and another health provider, he would 
receive twelve months’ severance pay and other benefits.
        To 
ensure employee retention and continue enthusiastic support for the acquisition 
program, BCHS offered its Key Executive Protection Program to certain employees 
during the acquisition process. It offered this program to Robinson through an 
offer letter from BCHS’s president and chief executive officer dated October 
17, 2001. Robinson was told that he was a “key executive” in the upcoming 
merger and “instrumental to our success as we move into the future 
together,” and that the purpose of the protection program was to “provide a 
level of protection to key executives for their continued contribution and 
loyalty to our organization.” Further, in the event that the consolidation of 
functions resulted in the elimination of Robinson’s position as chief 
financial officer, BCHS would provide a severance benefit, which was defined as 
eighteen months of the base salary in effect at the time of termination, and 
other benefits. On December 10, 2001, Robinson executed the Key Executive 
Agreement (“Agreement”) that was to be in effect during the “transition 
period” from January 1, 2002 to December 31, 2003. Under the Agreement, should 
his position be eliminated during the transition period and a comparable one not 
offered, he would obtain specified severance benefits. On the other hand, if he 
quit during the transition period, did not accept a comparable position, or was involuntarily 
terminated for any reason other than job elimination, then the benefits 
under the program would be forfeited.
        Robinson 
testified that he sought assurances that the involuntary-termination language 
was not included so that BCHS could just terminate someone for no reason and 
then not have to pay severance benefits. Robinson understood that certain acts 
would require action but that the involuntary termination language would not be 
applied in an arbitrary manner. However, he also understood he could not behave 
in just any way he wanted and not be subject to termination, and he admitted 
that no one told him that he could not be involuntarily terminated.
        In 
November 2001, prior to Robinson’s execution of the Agreement, BCHS offered 
Robinson a non-comparable position, which he declined. Instead, he informed BCHS 
that he would be exercising his rights under the Agreement. He also testified 
that he told Patrick Flynn, his former boss at All Saints, that he would work 
for the first six months of the transition period and “then potentially elect 
the benefits under the program, unless something happened during that time where 
a different position might become available.” On January 24, 2002, BCHS 
terminated Robinson.
        In 
September 2000, Janice Whitmire, the All Saints Human Resource Director, had 
received complaints regarding an affair between Robinson and Lori Wright, one of 
Robinson’s subordinates, and concerning favoritism toward Wright demonstrated 
by Robinson. In March 2001, Whitmire received a telephone call from Wright’s 
husband informing her that his wife was having an affair with Robinson. Both 
Whitmire and Patrick Flynn, All Saints’s President and Chief Executive 
Officer, had counseling sessions with Robinson about the situation. 
Additionally, beginning late 2001, members of the BCHS financial team had become 
concerned with Robinson’s commitment to the acquisition process. Robinson also 
repeatedly attempted to have James Pool, BCHS’s Vice President and Corporate 
Controller, give Wright a retention bonus and severance package even though Pool 
told Robinson that Pool was not the decision maker regarding Wright and that 
Wright was not entitled to such benefits.
        Finally, 
in January 2002, Whitmire received a report that Robinson was seen kissing 
Wright in a parked car on Baylor All Saints’s premises. Later that same month, 
Patrick Flynn and Venita McClellon-Allen, BCHS’s Senior Vice President of 
Human Resources, informed Robinson that he was being terminated for his 
inappropriate relationship with a co-employee and for creating obstacles to a 
smooth transition. Flynn also speculated in a private meeting with Robinson that 
an additional reason for the termination might have been Robinson’s use of 
profanity in the work place. There was no documentation or testimony by other 
employees or supervisors that Robinson was terminated to avoid paying him under 
the Agreement.
        On 
May 23, 2003, Robinson filed his original petition against BCHS and Baylor All 
Saints, alleging causes of action for breach of contract, fraud, negligent 
misrepresentation, and age discrimination. On August 29, 2004, the trial court 
granted the joint motion for summary judgment filed by BCHS and Baylor All 
Saints (together, “Baylor”) and sustained some of Baylor’s evidentiary 
objections. This appeal resulted but does not include a complaint concerning the 
dismissal of the age discrimination claim. It is Robinson’s position that he 
was terminated because his employer [2] did not want to pay him 
his severance package, while his employer’s position is that he was fired for 
having an adulterous affair with a subordinate even after counseling about the 
situation and for interfering in a smooth merger transition.
III. Standard of Review
        When 
a party moves for summary judgment under both Rules 166a(c) and 166a(i), we will 
first review the trial court’s judgment under the standards of Rule 166a(i). Ford 
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). If Robinson failed to 
produce more than a scintilla of evidence under the Rule 166a(i) burden, then 
there is no need to analyze whether Baylor’s summary judgment proof satisfied 
the less stringent Rule 166a(c) burden. Id.
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense. Tex. R. Civ. P. 166a(i). 
The motion must specifically state the elements for which there is no evidence. Id.; 
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). The 
trial court must grant the motion unless the nonmovant produces summary judgment 
evidence that raises a genuine issue of material fact. See Tex. R. Civ. P. 166a(i) & cmt.; S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the no 
evidence summary judgment was rendered. King Ranch, Inc. v. Chapman, 118 
S.W.3d 742, 751 (Tex. 2003), cert. denied, 124 S. Ct. 2097 (2004); Johnson, 
73 S.W.3d at 197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). If 
the nonmovant brings forward more than a scintilla of probative evidence that 
raises a genuine issue of material fact, then a no evidence summary judgment is 
not proper. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San 
Antonio 1998, pet. denied).
IV. Breach of Contract
        Robinson’s 
first three issues pertain to his complaint that Baylor failed to establish as a 
matter of law that Robinson was not fired to avoid payment of severance benefits 
under the Agreement. We will construe these first three issues as attacking the 
trial court’s grant of summary judgment against Robinson on his breach of 
contract claim. As previously stated, we first review the trial court’s 
judgment under the standards of Rule 166a(i). Ford Motor Co., 135 S.W.3d 
at 600. Under this review, Robinson’s breach of contract complaint misplaces 
the burden of proof. As stated in Rule 166a(i), “[t]he court must grant the 
motion unless the respondent [Robinson] produces summary judgment evidence 
raising a genuine issue of material fact.” Tex. R. Civ. P. 166a(i). After reviewing 
the evidence, we conclude that Robinson has not carried this burden.
        Robinson 
asserts that the termination language contained in the Agreement, “if you are 
involuntarily terminated by the Employer for any reason other than job 
elimination, you will not be eligible for the Program payments or benefits 
described herein” has been interpreted by Baylor to establish a “just 
cause” standard for terminating his employment. Robinson takes this position 
because Baylor affirmatively pleaded in Baylor’s first amended answer that 
“just cause existed for the actions taken with respects to [Robinson’s] 
employment.” However, Baylor’s first amended answer does not specify the 
cause, or causes, of action to which such affirmative defense is applicable. 
Robinson could have obtained such specificity by way of a special exception, but 
he did not. Indeed, Baylor asserts that the “just cause” affirmative defense 
addressed the age discrimination claim, which Robinson has abandoned on appeal.
        We 
decline to bind Baylor to the untargeted interpretation asserted by Robinson of 
the affirmative defense pleaded in the first amended answer. The Agreement says 
plainly and unambiguously the circumstances under which Baylor was relieved of 
its obligation under the contract: (1) Robinson quit; (2) Robinson did not 
accept a comparable position; or (3) Robinson was involuntarily terminated for any 
reason other than job elimination. The Agreement does not mention “just 
cause.” Accordingly, we conclude that the issue of “just cause” is not 
implicated by the Agreement.
        It 
is undisputed that Robinson did not quit and was not offered a comparable 
position, leaving only the possibility that he was terminated for a reason other 
than job elimination, if Baylor was not required to pay him under the Agreement. 
Therefore, we determine that the question before this court is whether Robinson 
raised more than a scintilla of probative evidence that he was fired for a 
reason other than job elimination. A literal reading of “any reason other than 
job elimination” would encompass Robinson’s alleged reason, Baylor’s 
desire not to pay his severance package. Robinson supports this reason by 
pointing to evidence that he claims establishes that Baylor had no real problem 
with his performance, and he claims that the proffered reason for his 
firing—the alleged relationship with his co-worker, Wright—was a pretextual 
“smoke screen” because Baylor had not terminated any other employees for 
this reason. However, McClellon-Allen testified that in addition to terminating 
Robinson, Baylor terminated Wright and had since terminated one or two other 
employees due to an inappropriate relationship between co-workers. Furthermore, 
Baylor had a written policy prohibiting off-the-job conduct, including adultery, 
that could lead to a disruptive situation in the workplace or discredit 
Baylor’s name. Accordingly, having reviewed this and all the evidence as a 
whole, we conclude that Robinson has not produced more than a scintilla of 
evidence that raises a genuine issue of material fact with regard to the 
contractual termination issue. We overrule Robinson’s first three issues.
V. Fraud and 
Negligent Misrepresentation
        In 
his fourth and fifth issues, Robinson complains that the trial court erred in 
granting summary judgment to Baylor because of the existence of “strong” 
circumstantial evidence of Baylor’s improper motivation for terminating 
Robinson. We will construe these issues as attacking the trial court’s grant 
of summary judgment against Robinson on his fraud and negligent 
misrepresentation claims. To prove common law fraud, Robinson must show that a 
misrepresentation was made with knowledge of its falsity or made recklessly 
without any knowledge and as a positive assertion. Johnson & Higgins of 
Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). To 
prove negligent misrepresentation, Robinson must show that Baylor made a 
representation to Robinson in the course of their business in which they had a 
pecuniary interest, that the representation supplied to Robinson was false, that 
Baylor failed to exercise reasonable care or confidence in obtaining or 
communicating the information, and that Robinson justifiably relied on the 
representation. See Federal Land Ass. Bank of Tyler v. Sloane, 825 S.W.2d 
439, 442 (Tex. 1991).
        Robinson 
argues that circumstantial evidence that Baylor “tricked” him into signing 
the Agreement, all the while knowing that they intended to fire him or failing 
to exercise reasonable care in determining that they were going to fire him, 
should defeat Baylor’s motion for summary judgment. Robinson argues that this 
circumstantial evidence consists of the facts that Baylor knew of his 
relationship with Wright in late 2001; that Baylor put “heat” on 
Robinson’s supervisor in November 2001 to get Robinson to sign the Agreement; 
that Baylor told him the involuntary termination provision of the Agreement was 
“just legal language” but that “the final decision regarding whether or 
not [Robinson] accepted the benefits under the program or accepted a position 
with Baylor was totally [Robinson’s] choice”; and that Baylor finance 
employees became “more adversarial, more uncooperative, more demanding” 
after Robinson signed the Agreement.
        We 
do not agree that any of these facts constitute evidence that Baylor 
“tricked” Robinson into signing the Agreement, intentionally or negligently; 
none of these facts constitute any evidence that Baylor intended to terminate 
Robinson’s employment before Robinson signed the Agreement. Robinson’s 
assertions that these facts establish an inference of wrongdoing by Baylor 
amount to no more than mere speculation and do not rise to the level of more 
than a scintilla of evidence. See Kindred v. Con/Chem, Inc., 650 
S.W.2d 61, 63 (Tex. 1983) (“When the evidence offered to prove a vital fact is 
so weak as to do no more than create a mere surmise or suspicion of its 
existence, the evidence is no more than a scintilla and, in legal effect, is no 
evidence.”). Again, our review of the evidence fails to establish that 
Robinson has produced more than a scintilla of evidence that raises a genuine 
issue of material fact with regard to these claims of fraud and negligent 
misrepresentation. As such, his fourth and fifth issues are overruled.
VI. Evidentiary RulingsFinally, although not 
specifically included in Robinson’s initial issues presented, Robinson asserts 
in his brief that the trial court erred in its evidentiary rulings on certain 
objections to the summary judgment evidence. Robinson acknowledges that “the 
rulings don’t appear to dispositive of Robinson’s legal arguments”; and 
indeed, reversible error in civil cases requires a showing that the rulings (1) 
probably caused the rendition of an improper judgment or (2) probably prevented 
the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a). There is no 
demonstration by Robinson of either of the foregoing requirements, so we 
overrule this complaint as well.
VII. Conclusion
        Having 
overruled all of Robinson’s issues, we affirm the judgment of the trial court.


                                                                  BOB 
MCCOY
                                                                  JUSTICE

PANEL 
B:   LIVINGSTON, HOLMAN, and MCCOY, JJ.

DELIVERED: 
August 25, 2005

 
NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
The manner of disposition of this appeal moots any issues regarding whether 
Baylor Health Care System, Baylor All Saints Medical Center, or both, were 
proper parties.